*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0445p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

*v.*

        No. 05-6338

MICHAEL L. JACKSON,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 04-10062—James D. Todd, Chief District Judge.

Argued: November 2, 2006

Decided and Filed: November 30, 2006

Before: GILMAN and GRIFFIN, Circuit Judges; HEYBURN, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mary C. Jermann-Robinson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

## OPINION

_____

      GRIFFIN, Circuit Judge. Defendant-appellant Michael L. Jackson appeals his jury conviction of possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Defendant raises three issues on appeal, alleging that: (1) the district court erred in denying his motion to suppress because the affidavit in support of the search warrant failed to contain sufficient indicia of the confidential informant's reliability; (2) the evidence submitted at trial regarding the weight of the cocaine was insufficient to prove that defendant possessed 5.6 grams of cocaine base as alleged in the indictment; and (3) the court erred in calculating defendant's Sentencing Guidelines range, relying upon the government's expert's mere

_____

[*]The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

estimation of the quantity of cocaine base possessed by defendant.  For the reasons set forth below, we affirm.

I.

On January 9, 2004, officers participating in a regional drug task force executed a search warrant at defendant's residence in Saltillo, Tennessee.  The search warrant was obtained based on an affidavit executed by Officer Tim Cunningham, a member of the Savannah, Tennessee, Police Department, assigned to the drug task force.  The affidavit stated in pertinent part as follows:

> Within the past three days a controlled and monitored buy of crack cocaine has been made from Michael Jackson at this residence [location and description set forth in detail] by a confidential informant.  This informant was wearing a transmitting device which could be monitored by affiant.  Informant was met by affiant before going to this residence where informant and informant's vehicle was searched.  Informant was given money to make this purchase with that [sic] can be identified if found.  Affiant listened as Informant and Michael Jackson made this transaction.  Affiant heard informant call Michael by his name and then discuss this sale along with some earlier transactions.  Affiant observed informant going into this residence before making transaction.  After making this purchase informant met back with affiant and turned over what they had purchased from Jackson at this residence.  This was consistent with what affiant had heard thru [sic] monitoring device.  Affiant field tested what was purchased from Jackson and it checked positive for cocaine.  Checking with 911 the telephone at this residence is listed to a Michael Jackson.  Informant ask[s] their name not be revealed for fear of their life.  During transaction affiant recognized this being the voice of Michael Jackson.

Based on this information, the search warrant was issued on January 9, 2004, and was executed later that same day.  The police recovered eighteen bags of crack cocaine, nine guns, $400 in cash, and a small bag of marijuana.

A federal grand jury subsequently returned an indictment charging defendant with possession of 5.6 grams of cocaine base with intent to distribute and possession of a firearm in connection with a drug offense, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c), respectively.

Defendant filed a motion to suppress the evidence obtained as a result of the search of his residence, alleging that the search warrant was based upon a deficient affidavit and hence issued without probable cause.  The district court conducted a suppression hearing on March 1, 2005.  At the hearing, Officer Cunningham testified that, prior to seeking the search warrant, he and another officer conducted a controlled buy at defendant's residence.  Cunningham testified that he related the specific nature of the controlled buy and the name of the confidential informant to the issuing magistrate.  He further testified that the informant had no criminal record and no pending criminal charge.  Officer Cunningham stated that the informant was searched before the buy, he watched the informant enter the residence, and, during the course of the transaction, he recognized one of the voices as being that of defendant.

On cross-examination, Officer Cunningham testified that a transmitting device was worn by the informant during the controlled buy so that the officers could listen to the transaction.  Officer Cunningham testified that while he and the other officer sat in his unmarked vehicle approximately 150 yards away from defendant's residence, the informant drove separately to defendant's trailer in his own vehicle, which had been searched prior to the controlled buy.  Officer Cunningham testified that "the transaction actually took place just outside the door of the residence."  Noting that the affidavit in support of the search warrant indicated that "[a]ffiant observed informant going into

this residence before making transaction," defense counsel further questioned Officer Cunningham regarding where the controlled buy occurred. Officer Cunningham explained that "the transaction actually occurred outside at the residence itself on the porch, which the yard is part of the residence, to me, part of their residence." Officer Cunningham acknowledged that he did not witness the transaction; instead, the officers listened to the transaction using a monitoring device. However, the transmission was not recorded. After the purchase was made, the officers met with the informant a short distance away from defendant's residence and field-tested the substance sold to the informant, which tested positive for cocaine base. Officer Cunningham testified that the informant, a known drug user, was paid $50 for making the controlled buy.

In an oral ruling from the bench, the district court denied defendant's motion to suppress, concluding that the requisite probable cause to search the residence had been established. The district court further concluded that defendant's staleness argument was without merit, that the reliability of the informant was sufficiently buttressed by the monitored controlled buy and, even assuming arguendo there was a defect in the affidavit and warrant, the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984), applied to justify denial of defendant's motion to suppress. The court thereafter denied defendant's motion to reopen the proofs and to reconsider the order denying defendant's motion to suppress.

The case proceeded to a jury trial, during which Officer Cunningham reiterated the circumstances of the controlled buy. When the search warrant was executed, the officers found a styrofoam cooler in the laundry room area of defendant's residence. Inside the cooler there were two small socks containing eighteen individually packaged bags of crack cocaine. The officers also found a gun in the laundry room and several other firearms in other areas of the residence.

Agent Jessica Webb of the Tennessee Bureau of Investigation ("TBI") was called by the government to testify about the substance found in the bags. Agent Webb, a chemist charged with drug identification for the TBI, testified as to her qualifications as a biochemist. Without objection from defense counsel, the district court qualified her as an expert witness in the field of forensic chemistry. Agent Webb testified that she conducted a chemical analysis and weighed the substance found in the two socks seized from defendant's residence. She determined that the substance in the eighteen bags was cocaine base, with a total weight of 5.6 grams. Agent Webb explained the methodology utilized in weighing the cocaine:

> I would take the contents out of the bag; and in this particular instance, when we have a large amount of substance – [i]nside these bags were eighteen smaller bags. There is a scientific – a proven scientific method that we do. It's called random sampling. And I take the square root of the amount that was in there, and I weighed four bags – emptied the contents, and I weighed four empty plastic bags, and then I multiplied that by the eighteen that was in there and got the weight of the bags, the empty bags. And I subtracted that from the total weight of the bags plus the exhibit that was in there. So it came out to be 5.6 grams.

On cross-examination, Agent Webb further explained the extrapolation process:

> What I did was a – it's called random sampling. And I basically – I emptied the contents of four bags and weighed the empty bags and got a total weight and divided that by 4 and got the weight of an individual bag and multiplied that by 18 because all of the bags were similar in size and had about the same amount of material inside them. And I received the total weight of the eighteen bags, which would be empty bags, and I subtracted that by the total weight of the bags plus what's inside the bags.

Agent Webb clarified that she actually opened and tested six of the eighteen bags to determine the nature of the substance and emptied four of the bags for the purpose of calculating the total weight of the cocaine base. Agent Webb agreed that her calculation using selected samples was based upon the assumption that the bags were of identical weight and substance; other than the six bags actually tested, Agent Webb did not test the remaining twelve bags to verify their weight or whether the substance was cocaine. However, Agent Webb testified that her sampling method was the "normal procedure" and an accepted scientific practice in the forensic community that had proven to be a "statistically accurate methodology."

At the conclusion of the government's proofs, defense counsel moved for a judgment of acquittal, arguing that the government was unable to prove beyond a reasonable doubt that defendant actually possessed more than five grams of cocaine base in light of Agent Webb's testimony that she never weighed the full amount of drugs, but rather extrapolated the weight from a random sampling. The district court denied the motion.

The defense called the human resources manager at defendant's place of employment to testify that defendant had just received a large vacation reimbursement check from his job. Defendant's wife also testified on his behalf, explaining that there were several people – defendant, herself, their fifteen-year old son, her son from a previous relationship, his girlfriend, and their child – living in the trailer when the search occurred. Other relatives lived on the surrounding properties; thus, they never locked their doors because these relatives frequently accessed defendant's trailer. Defendant's wife testified that the guns found on the premises belonged to her husband.

At the conclusion of the proofs, defendant's renewed motion for judgment of acquittal was again denied by the district court. The jury found defendant guilty on count one, possession with intent to distribute more than five grams of cocaine base, but not guilty of possession of a firearm in connection with a drug crime.

On August 19, 2005, the district court sentenced defendant to seventy-eight months' incarceration followed by four years of supervised release. Defendant now timely appeals.

II.

Defendant first argues that the district court erred in denying his motion to suppress because the alleged "bare bones" affidavit in support of the search warrant failed to contain sufficient indicia of the informant's reliability. Defendant contends that the affidavit does not adequately specify the length of the confidential informant's involvement with Officer Cunningham, the reliability of the confidential informant, the reliability of past information provided by the informant, or the basis for the informant's knowledge of narcotics transactions. In addition, citing the affidavit's recitation that the informant made a controlled buy of narcotics "within the past three days," defendant maintains that the magistrate judge lacked probable cause to issue the search warrant because the information contained in the search warrant was stale.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. CONST. AMEND. IV. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990), and is found to exist when there is "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny. *United States v. Woosley,* 361 F.3d 924, 926 (6th Cir. 2004). Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Frazier*,

423 F.3d 526, 531 (6th Cir. 2005). "In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Illinois* v. *Gates*, 462 U.S. 213, 238 (1983)).

The magistrate's determination of probable cause is afforded great deference and should be reversed only if arbitrarily made. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). The district court's denial of a motion to suppress is reviewed by this court for clear error with respect to the court's findings of fact and de novo with regard to conclusions of law. *United States v. Carter,* 378 F.3d 584, 587 (6th Cir. 2004) (en banc). In such a review, this court considers the evidence in the light most favorable to the government. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006).

"While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, . . . in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532. An affidavit is sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate *may* believe that evidence of a crime will be found." *Allen*, 211 F.3d at 976. As we explained in *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005):

> Under *Allen*, while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. *See* [*Allen*, 211 F.3d] at 975-76. The affidavit could state that police corroborated significant parts of the informant's story. Or the affiant could attest "with some detail" that the informant provided reliable information in the past. *Id.* at 976. Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.

Consequently, "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *Woosley*, 361 F.3d at 927. *See also United States v. Pinson,* 321 F.3d 558, 563 (6th Cir. 2003) ("[T]he affidavit in this case contained [the officer's] personal observation, his pat down of the informant before and after the purchase of the narcotics, and the fact that the drugs purchased by the confidential informant were later tested positive for cocaine base. All of this information was clearly stated in the affidavit, and the affidavit meets the *Allen* test."); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information.").

Recently, in *United States v. Coffee*, 434 F.3d 887, 894-95 (6th Cir. 2006), this court found the requisite probable cause where the officer's affidavit in support of the search warrant contained no averments that the confidential informant was reliable based on prior contacts, but did contain substantial independent police corroboration because it detailed the circumstances of the controlled purchase of the cocaine base.

Here, as in *Coffee*, Officer Cunningham's affidavit does not expressly vouch for the credibility or reliability of the informant. Nonetheless, Officer Cunningham's affidavit avers that he listened to the controlled buy via a monitoring device from a location near defendant's residence, visually observed the two individuals, heard defendant discuss the sale of crack cocaine, along with some earlier transactions, and identified defendant's voice as that of the seller. Officer Cunningham searched the informant before the purchase, supplied him with marked funds, and immediately met with the informant following the buy and field-tested the purchased substance. Consequently, although details concerning the informant's reliability gleaned from past encounters are lacking, the magistrate's finding of probable cause in this case was based on the affiant's personal knowledge and observations, rather than hearsay of the informant. Officer Cunningham's corroboration of events that occurred during the controlled buy, as set forth in the affidavit, provide sufficient probable cause to sustain issuance of the search warrant. *Coffee*, 434 F.3d at 894-95.

Further, contrary to defendant's contention, there is no requirement that an informant be named either in the affidavit or the search warrant. *See Woosley*, 361 F.3d at 927 n.4 ("[W]e do not read *Allen* as setting a rigid requirement that a confidential informant always be 'named to the magistrate.'"). In any event, when he testified at the suppression hearing, Officer Cunningham stated that he did in fact give the name of the informant to the magistrate.

Moreover, defendant's staleness argument is without merit. "[A] warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." *United States v. Abboud,* 438 F.3d 554, 572 (6th Cir. 2006). In reviewing whether a probable cause finding is stale, this court should consider the defendant's course of conduct, the nature and duration of the offense, the nature of the relevant evidence, and any corroboration of the information. *United States v. Gardiner*, 463 F.3d 445, 471 (6th Cir. 2006).

As the government notes, this court has previously found staleness arguments in analogous circumstances to be without merit. *See United States v. Lattner*, 385 F.3d 947, 953 (6th Cir. 2004) (surveillance of suspected narcotics trafficking at the defendant's house two days prior to securing search warrant not stale evidence); *United States v. Johnson*, 351 F.3d 254, 259-60 (6th Cir. 2003) (informant's observations concerning drug dealing given within three days of issuance of search warrant not stale); *Pinson*, 321 F.3d at 565 (search warrant not stale where controlled purchase by informant, on which warrant was based, took place three days before issuance of warrant). The three-day period between the controlled buy and issuance of the search warrant in the instant case was therefore reasonable and the warrant was not stale.

III.

Defendant next advances two arguments concerning the quantity of cocaine base at issue. First, he contends that insufficient evidence was adduced at trial to establish beyond a reasonable doubt that defendant possessed in excess of five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Specifically, defendant argues that the random sampling methodology employed by Agent Webb was no more than an educated guess and did not accurately establish that defendant was in possession of 5.6 grams of crack cocaine. Second, defendant asserts that the district court erred in calculating the applicable Sentencing Guidelines range when it utilized Agent Webb's allegedly unreliable estimation of drug weight to set defendant's base offense level at 26, in accordance with U.S.S.G. § 2D1.1(c)(7), for possession of more than five grams, but less than twenty grams, of cocaine base. Defendant further maintains that the sentence imposed by the district court is unreasonable because the court failed to weigh the requisite 18 U.S.C. § 3553(a) factors.

A.

The relevant question in assessing a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Kincaide*, 145 F.3d 771, 781 (6th Cir. 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999). On the contrary, the court will "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001). "[I]n cases where the factual determination of the quantity of drugs attributable to the defendant significantly impacts the appropriate sentencing range under 21 U.S.C. § 841, a jury must decide on the quantity of the drugs beyond a reasonable doubt." *In re Clemmons*, 259 F.3d 489, 492 (6th Cir. 2001).

Pursuant to this standard, we conclude that sufficient evidence was presented to sustain defendant's conviction of possession of five or more grams of cocaine base. Agent Webb testified that she used a random sampling method, whereby she examined and tested the substance in six of the eighteen bags of cocaine base, and extrapolated the total weight, which she determined to be 5.6 grams, by emptying the contents of four of the bags and using a "statistically accurate" mathematical formula to arrive at the total net weight of all eighteen bags. Webb testified that, although she did not sample or weigh the remaining twelve bags individually to verify weight or content, "[t]o [her] observation, they were similar" in size and weight and the extrapolation was "accepted scientific practice in the forensic community." All of the bags were seized at the same time, from the two socks in the styrofoam cooler, during the search of defendant's residence.

At trial, in challenging this methodology and the sufficiency of the proofs pertaining to the total weight of the confiscated bags, defendant argued in general terms that the extrapolation was merely an unreliable estimation of the total weight of the eighteen bags.

We note that defendant neither challenged the admissibility of Agent Webb's testimony nor raised any *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] objections to the reliability and relevancy of the random sampling methodology, but rather challenged the sufficiency of this evidence in the context of his motion for a judgment of acquittal. As this court has noted in *Conde v. Velsicol Chemical Corp.*, 24 F.3d 809, 813 (6th Cir. 1994), "[T]he holding in *Daubert* . . . dealt only with the circumstances under which expert testimony is admissible, and not with the separate question of when such testimony is sufficient to submit a case to the jury." The district court herein properly noted this distinction when, in ruling on defendant's motion, it noted that defendant's argument that Agent Webb's calculations were insufficient to support count one of the indictment "go to the weight of the testimony, rather than its admissibility." In any event, the district court properly admitted Webb's "reasonably reliable" extrapolation, *see infra*, Section III.B., and defendant produced no evidence or testimony contradicting Agent Webb's conclusions, the viability of her random sampling technique, or the weight of the cocaine base.

Defendant was specifically charged in the indictment with possession with intent to distribute in excess of five grams of cocaine base, and the government's expert, Agent Webb, testified that her extrapolation yielded a total drug weight of 5.6 grams. The jury was entitled to accept or reject this testimony regarding the drug quantity and obviously credited such evidence in concluding that defendant possessed more than five grams of cocaine base. This evidence, taken in the light most favorable to the government, is sufficient evidence upon which a trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *See United States v. Chavis*, 296 F.3d 450, 455-56 (6th Cir. 2002) (sufficient evidence supported defendant's conviction for possession of more than five grams of crack cocaine where the jury was entitled to believe the

testimony of the government's expert witness that she weighed cocaine base using measurement that she believed to be accurate to a reasonable scientific certainty).

B.

Defendant's argument that his sentence was unreasonable and that the district court erred in calculating the total amount of cocaine base for which he should be held responsible under the Sentencing Guidelines is similarly without merit.

The presentence investigation report ("PSR") set defendant's base offense level at 26, in accordance with U.S.S.G. § 2D1.1(c)(7), for possession of more than five grams of cocaine base but less than twenty grams. This base offense level was enhanced by two levels for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1), making the total offense level 28. The PSR determined that defendant had no prior criminal history and thus assigned a score of zero and criminal history category of I. The resultant Guidelines range was seventy-eight to ninety-seven months.

At the sentencing hearing, defendant objected to the factual basis for the sentence contained in paragraphs 3 and 4 of the PSR, disputing that the amount of the crack cocaine, 5.6 grams, had been sufficiently established. Defendant also objected to the two-level enhancement for possession of a dangerous weapon, arguing that because he was acquitted on the weapons count, there was an insufficient factual basis for imposition of that enhancement. Defendant further argued that a sentence below the Guidelines range would be reasonable under the circumstances, given his age, lack of criminal history, and steady employment. The district court, however, after reviewing the trial testimony of Agent Webb, rejected defendant's argument regarding the amount of drugs involved and denied defendant's objection to the two-level enhancement. The court proceeded to sentence defendant to seventy-eight months' imprisonment, the minimum sentence in the Guidelines range.

This court reviews the sentence imposed by the district court for reasonableness. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). A sentence within the Guidelines is presumptively reasonable. *Id*. at 808. Further, this court reviews for clear error the district court's determination of the quantity of drugs attributable to a defendant for sentencing purposes. *United States v. Swanberg,* 370 F.3d 622, 625 (6th Cir. 2004). At sentencing, the government must prove the quantity of drugs attributable to a defendant by a preponderance of the evidence. *Id*. "[C]ourts have endorsed statistically based drug-quantity extrapolations predicated on random test samples in circumstances where the government was able to demonstrate an 'adequate basis in fact for the extrapolation and that the quantity was determined in a manner consistent with the accepted standards of [reasonable] reliability.'" *United States v. Scalia*, 993 F.2d 984, 989 (1st Cir. 1993) (quoting *United States v. McCutchen*, 992 F.2d 22, 25-26 (3d Cir. 1993)). "[S]ufficient indicia of reliability may be found where a preponderance of the evidence demonstrates that (1) a proper 'random' selection procedure was employed; (2) the chemical testing method conformed with an accepted methodology; (3) the tested and untested samples were sufficiently similar in physical appearance; and (4) the tested and untested samples were contemporaneously seized at the search scene." *Id*. In other words, "the overall margin of reliability in a drug-quantity approximation must be adequate to afford reasonable assurance that the defendant is not subjected to a guideline sentence or a mandated minimum sentence greater than warranted by the reliable evidence." *Id*.

Here, Agent Webb testified on behalf of the government that she used a random sampling process, which she characterized as "normal procedure" and "statistically accurate methodology," to reach her conclusion that the eighteen bags of cocaine base seized from defendant's residence weighed 5.6 grams. She observed that all of the bags, contemporaneously seized from defendant's residence, were of equal size and weight. This exclusive evidence regarding the quantity and

contents of the bags possessed sufficient indicia of reliability and constituted the cornerstone of the jury's verdict finding defendant guilty of possession with intent to distribute in excess of five grams of cocaine base.  In turn, it was precisely this jury determination of the quantity of cocaine, based upon Agent Webb's reasonably reliable methodology, that the district court used as the basis for its Guidelines calculation that the base offense level of 26 was appropriate, in accordance with U.S.S.G. § 2D1.1(c)(7), for possession of more than five grams of cocaine base but less than twenty grams. Under the circumstances, the district court did not clearly err in its Guidelines calculations regarding the quantity of drugs attributable to defendant  for sentencing purposes.

Moreover, the record belies defendant's argument that the court failed to properly consider the § 3553(a) factors, particularly defendant's age, criminal history, and steady employment. Defendant's sentence of seventy-eight months of imprisonment, at the low end of the Guidelines range, was entirely reasonable.

For the above-stated reasons, defendant's conviction and sentence are affirmed.