**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0284n.06
Filed: April 20, 2007

**No. 05-6351**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ROBERT LORD, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Before:  BOGGS, Chief Circuit Judge; DAUGHTREY and GIBBONS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.**  Defendant-appellant, Robert Lord, pled guilty

to two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Lord

appeals the district court's denial of his motion to suppress the two firearms discovered in the course

of a search of his home.  For the reasons below, we affirm the district court's denial of Lord's motion

to suppress.

I.

On February 23, 2004, a "concerned citizen" notified Agent Benny Allen of the Bureau of

Alcohol, Tobacco, Firearms, and Explosives (ATF) of his belief that Lord, a convicted felon, was

in possession of a firearm.  Based on this information, on June 8, 2004, Agent Allen and Agent Brian

1

Weaks, also of the ATF, went to Lord's home and represented to Lord that they were real estate investors interested in purchasing his house. With Lord's consent, the officers entered the residence and engaged in a visual inspection of the interior, including Lord's bedroom closet.[1] Agent Weaks, upon looking into the closet, observed a "soft long-gun case," grabbed the case, and identified what felt like a shotgun or a rifle.

On July 15, 2004, Agent Allen submitted an application for a search warrant. The supporting affidavit appended to the application provides, in pertinent part:

> On February 23, 2004, I received information from a concerned citizen regarding Robert Lord illegally possessing firearms. The concerned citizen stated Robert Lord was a convicted felon who possessed a shotgun and a pistol. I received pictures via email from the concerned citizen displaying Lord possessing a shotgun and a revolver. I later determined through NCIC that Robert Lord was convicted of a felony in 1992.
>
> On June 8, 2004, ATF agent Brian Weaks and I, in an undercover capacity, went to Robert Lord's residence. Agent Weaks and I posed as real estate investors since Lord's residence was for sale. Agent Weaks and I were invited inside the residence by Lord. Once inside the residence, Agent Weaks observed a soft long-gun case in Lord's master bedroom closet. Agent Weaks grabbed and squeezed the soft case and felt a hard object that appeared to be a rifle or a shotgun.
>
> On July 6, 2004, ATF agent Gray Lane and I interviewed the concerned citizen regarding the previous information given to me concerning Robert Lord. I was informed by the concerned citizen that he observed guns either in Lord's truck or house on at least four occasions. I was informed by the concerned citizen that Lord tried to persuade the concerned citizen to buy a small pistol for him (Lord) because Lord stated that he could not purchase a firearm due to his federal criminal record.

On the basis of the information in the affidavit, a United States Magistrate Judge issued a search warrant for Lord's home. The agents executed the warrant on July 16, 2004, and discovered a

---

[1]Although Lord testified at a suppression hearing before the district court that he did not consent to an inspection of his bedroom closet, the district court found the agents' testimony to the contrary "credible." Lord does not challenge this factual finding on appeal.

Remington Model 870, 20-gauge shotgun and a Taurus .357-caliber revolver. Lord waived his right to an attorney and provided a confession to the officers at the scene.

A grand jury empaneled in the Western District of Tennessee issued an indictment, charging Lord with two counts of possessing a firearm subsequent to a felony conviction in violation of 18 U.S.C. § 922(g). Lord moved to suppress the firearms seized on July 16, arguing that the agents came upon the firearms in the course of an unlawful search of his home. Following a hearing, the district court denied Lord's motion. Lord, the court ruled, consented to the officers' entry, and the agents' deception concerning their identities did not negate that consent. The court further determined that Agent Weaks's probing of the gun case did not constitute a prohibited search.

Following the denial of his suppression motion, Lord entered into a plea agreement with the government, in which he reserved his right to appeal the district court's decision on his motion to suppress. The court accepted Lord's guilty plea to both charges, and on August 17, 2005, sentenced him to fifteen months imprisonment to be followed by two years of supervised release.

II.

In evaluating the propriety of a district court's decision on a motion to suppress, we review the trial court's factual determinations for clear error and its legal conclusions *de novo*. *United States v. Ostrander*, 411 F.3d 684, 694 (6th Cir. 2005).

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches at the hands of the government. U.S. Const. amend. IV. It is a well-established tenet of Fourth Amendment doctrine that a warrantless search of an individual's home is presumptively unreasonable. *See Cummings v. City of Akron*, 418 F.3d 676, 685 (6th Cir. 2005). In the criminal context, the exclusionary rule bars the admission of evidence acquired pursuant to an unlawful

search. *See Murray v. United States*, 487 U.S. 533, 536 (1988). The rule also acts as a bar to "evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *United States v. Akridge*, 346 F.3d 618, 623 (6th Cir. 2003) (internal quotation marks omitted). Lord contends that the district court erred in refusing to exclude the evidence against him as the products of an illegal search. For our purposes, we are concerned with: (A) the agents' initial entry into Lord's home and visual examination of the interior, including the bedroom closet and (B) Agent Weaks's physical handling of the soft gun case in Lord's closet.

A.

The government argues that, because Lord granted Agents Allen and Weaks permission to inspect his home, their entry and examination of the interior of his house was not unlawful.[2] It is well-established that "[w]here valid consent is given, a search is permissible under the Fourth Amendment even without a warrant or probable cause." *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006). Here, the record is clear that Lord allowed Agents Allen and Weaks into his home, and we find no clear error in the district court's factual finding that Lord consented to the inspection of his bedroom closet. Although the agents secured entry by misrepresenting their identities, their deceit does not negate Lord's consent to entry. *See, e.g.*, *United States v. Pollard*, 215 F.3d 643, 648 (6th Cir. 2000) ("[I]t is well established that an undercover officer may gain entrance by misrepresenting his identity and may gather evidence while there."); *United States v. Baldwin*, 621 F.2d 251, 252-53 (6th Cir. 1980) ("The Fourth Amendment . . . does not protect wrongdoers from

---

[2]Although Lord commits his attention to arguing that exigent circumstances did not exist to justify the agents' unlawful search, the government has never argued that the exigent circumstances exception to the warrant requirement justified the agents' actions, and that was not the basis for the district court's decision. We consider the exigent circumstances doctrine inapplicable to this case.

misplaced confidence in their associates. . . . On the contrary, an agent may legitimately gain entrance into a house by misrepresenting his identity."). Therefore, the agents' entry into Lord's home under the guise of being real estate investors and the use of that ruse to look into his bedroom closet did not constitute an unreasonable search prohibited by the Fourth Amendment.

B.

Relying on the Supreme Court's decision in *Bond v. United States*, 529 U.S. 334 (2000), Lord also argues that Agent Weaks's squeezing of the gun case in his bedroom closet constituted an unlawful search. In *Bond*, the Court determined that a police officer's physical manipulation of a bus passenger's carry-on bag violated the passenger's reasonable expectation of privacy in his luggage and constituted an illegal search in violation of the Fourth Amendment. *Id.* at 338-39. Relying on *Bond*, the Sixth Circuit in *United States v. Waller*, 426 F.3d 838 (6th Cir. 2005), concluded that the defendant had a reasonable expectation of privacy in the contents of a closed piece of luggage stored in a bedroom closet in a friend's bedroom. *Id.* at 844.

The government responds that Agents Allen and Weaks "were invited to examine the residence and the closets by the defendant." Although this is an accurate factual description of the circumstances surrounding the June 8 search, nothing in the record supports the government's implication that Lord's consent to look inside his bedroom closet extended to the examination of the contents of a closed case inside the closet. Our court has held that, in ascertaining the scope of a consent to search, a reviewing court considers what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *United States v. Garrido-Santana*, 360 F.3d 565, 576 (6th Cir. 2004). We think it unlikely that a reasonable person would understand Lord's consent to two men he believed to be prospective home buyers to encompass the "squeez[ing]

5

and grab[bing]" of a closed case in his bedroom closet. We accordingly reject the government's suggestion that Lord's consent to examination of his closet extended to the handling of closed storage containers in the closet. Under *Bond* and *Waller*, Agent Weaks's actions in squeezing the case constituted an unlawful search, the fruits of which must be excluded unless some exception to the exclusionary rule applies.[3]

The government contends that the district court properly admitted the evidence obtained as a result of Agent Weaks's actions under the good faith exception to the exclusionary rule. The government's invocation of the good faith exception is inappropriate here, as the search it seeks to justify occurred prior to the issuance of a warrant, and there was, therefore, no warrant on which the agents could have relied in searching Lord's home. *See United States v. Leon*, 468 U.S. 897, 913 (1984) (adopting good faith exception to exclusionary rule where police seize evidence in reasonable reliance on a warrant issued by a detached and neutral magistrate); *United States v. Jenkins*, 396 F.3d 751, 761 (6th Cir. 2005) (noting that government's reliance on good faith exception was "erroneous" where illegal search in question "occurred *before* the warrant was issued, and thus the [seized evidence] could not be admissible under a doctrine that requires reasonable reliance on a warrant").

The independent source doctrine is a more appropriate basis for the resolution of this case. Under that rule, the presence of unlawfully secured information in a search warrant affidavit does not necessarily make a subsequently obtained warrant invalid. *See id.* at 758. Instead, a court

---

[3]The government's attempt to distinguish *Waller* is unavailing. Although the court based its decision in *Waller* on a third party's lack of authority to consent to the search of the defendant's luggage, the court first determined that the defendant possessed a legitimate expectation of privacy in his closed luggage, and the police's search of that luggage constituted a violation of that reasonable expectation. 426 F.3d at 845.

reviewing a request for the suppression of evidence seized during the execution of a warrant issued on the basis of an affidavit containing both (1) information acquired during an unlawful search and (2) lawfully obtained, "untainted" information must evaluate "the sufficiency of the untainted affidavit to see if probable cause exists without the tainted information." *Id.* at 760 (interpreting rule announced in *Murray*, 487 U.S. at 537-38). "If the application for a warrant contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies, providing that the officers were not prompted to obtain the warrant by what they observed during the initial entry." *Id.* at 758 (internal quotation marks omitted).

We turn our attention, then, to the representations Agent Allen made in his July 15 affidavit, disregarding the affidavit's claim that, when Agent Weaks squeezed the case, he "felt a hard object that appeared to be a rifle or a shotgun." Stripped of that information, the affidavit consists of the reports provided by the "concerned citizen" to Agent Allen on February 23, 2004, and July 6, 2004, concerning Lord's possession of a firearm and Agent Weaks's observation of a "soft long-gun case" inside Lord's closet.

An evaluation of the existence of probable cause "requires consideration of whether there were reasonable grounds to believe at the time of the affidavit that the law was being violated on the premises to be searched." *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998). When an affidavit purports to rely on the representations of an unnamed informant, like the "concerned citizen" in the present case, government officials must offer some combination of assurances of the informant's reliability or evidence of police corroboration. *United States v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006). Traditionally recognized indicia of informant reliability include: "a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal

his or her name." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). "As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *Id.* The weaker the showing of informant reliability offered in an affidavit, the more necessary a determination that police confirmed the information provided by such an informant. *See Jackson*, 470 F.3d at 307 ("[I]n the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration."); *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (*en banc*) (noting that previous Sixth Circuit probable cause cases "rightly insisted upon substantial independent police corroboration" in the absence of "any indicia of the informants' reliability").

The affidavit in the instant case lacks certain traditional markers of reliability. The affidavit does not provide the informant's name. No information appears concerning the dates of the events the informant recounts. Agent Allen does not expressly attest to the reliability of the informer either based on previous experience with the individual or his own perception of the citizen's reliability. However, the individual spoke with law enforcement agents on at least two occasions and provided detailed accounts of Lord's unlawful possession of a firearm. We also think it significant that the confidential informer provided Agent Allen with a photograph of Lord possessing a firearm because it served as further confirmation of the informant's firsthand knowledge.

To the extent that Agent Allent's failure to vouch for the reliability of the informer in his affidavit makes this a comparatively weaker showing of reliability, it is not fatal to the probable cause determination. "[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by the police of the informant's information." *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000).

8

Here, in addition to outlining the information provided by the concerned citizen, the affidavit also states that Agent Weaks "observed a soft long-gun case in Lord's master bedroom closet," an observation made in the course of an inspection to which Lord consented. Although the agent's identification of a gun case does not conclusively establish possession of a gun, the presence of the case in Lord's closet provides substantial support for the report provided by the informant.

Taken together, the detailed statements of the confidential informant and the agents' independent verification of the informant's claims constitute a sufficient legal basis to sustain the magistrate judge's probable cause decision. In reaching this conclusion, we note that our recent probable cause precedent has generally eschewed a rule-bound, formulaic approach to probable cause determinations. *See Jackson*, 470 F.3d at 308 ("[T]here is no requirement that an informant be named either in the affidavit or the search warrant."); *McCraven*, 401 F.3d at 697 (noting that court's *en banc* decision in *Allen* did not "define the minimum requirements for an affidavit based on an informant's tip"); *Allen*, 211 F.3d at 976 (calling for "return to the basics of the Fourth Amendment: is there 'probable cause' to believe that evidence of a crime will be found in the search?"). In view of this more holistic, "totality-of-the circumstances" approach, *see United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006), we conclude that there was adequate information in the affidavit, stripped of any reference to material gleaned from Agent Weaks's unlawful handling of the gun case, to sustain the magistrate judge's reasonable belief that evidence of a crime would be found in Lord's residence.

## III.

For the foregoing reasons, we affirm the district court's denial of Lord's motion to suppress.

9