NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0652n.06
Filed: October 24, 2008

No. 07-5867

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| NEELY L. HENRY, | ) | MIDDLE DISTRICT OF TENNESSEE, |
| | ) | NASHVILLE DIVISION |
| Defendant-Appellant, | ) | |
| | ) | |
| | ) | |

Before: BOGGS, Chief Judge; GIBBONS and GRIFFIN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Neely L. Henry appeals

the district court's denial of his motion to suppress. Henry argues that the evidence discovered

during a search of 2414 25th Avenue North, Nashville, Tennessee, executed pursuant to a warrant,

should have been suppressed because the warrant lacked probable cause. Because we find that the

district court did not err in finding probable cause, we affirm the district court's denial of Henry's

motion to suppress.

Within 72 hours prior to December 10, 2005,[1] a confidential informant working for the

Metropolitan Nashville Police Department ("MNPD") purchased powder cocaine at 2414 25th

---

[1]The Pre-Sentence Investigation Report ("PSR") states that the warrant was executed on
December 13, 2005; the warrant itself is dated December 10, 2005.

Avenue North, Nashville, Tennessee (the "residence"). According to the investigation, the residence belonged to Marjorie Rucker, mother of the defendant, Neely Henry; according to Rucker, she was out of town during the period in question and had asked Henry to watch her apartment while she was away. In the affidavit supporting the search warrant, Officer Reece stated as follows:

> My name is Steve Reece and I have been a sworn law enforcement officer since 1991. I have participated in narcotics enforcement since 1994 and was assigned to the North Sector Crime Suppression Unit in February of 2004. Within the last 72 hours, a reliable CI was searched and given previously photocopied buy money by Officer McCormack and directed to go to 2414 25th Avenue North. Said CI went directly to the residence, knocked on the door, unknown subject answered the door CI [sic] went inside the location, stayed momentarily. The CI returned back to the CI's vehicle and was followed by undercover officers to an undisclosed location where the CI gave Under cover [sic] officer a plastic baggie with cocaine inside, which tested poss. For Cocaine Base [sic]. CI was searched again, Police did not find any contraband. Said CI is familiar with said narcotic from previous experience exposure [sic]. Said CI wishes to remain anonymous for fear of reprisal.

The affidavit also detailed Officer Reece's experience and the basis of his general knowledge relevant to the search warrant.

Based on the affidavit, a search warrant was issued on December 10, 2005. The warrant was executed on December 13, 2005. Upon entering the apartment, officers found Henry either still in or just getting out of the shower. Henry was the only individual in the apartment at that time. After being read his *Miranda* rights, the defendant informed the officers that there were drugs in the pocket of his pants, which were located in his bedroom, and that there was a gun under the pillow on his bed. In executing the search warrant, the officers discovered the following evidence: (1) powder and crack cocaine in the pocket of Henry's pants; (2) three hundred and fifty seven dollars in cash in Henry's pants' pocket; (3) a set of electronic scales in the kitchen of the apartment; and (4) a .38-caliber revolver, which had been manufactured outside of Tennessee.

Before the district court, Henry argued that the warrant was not supported by probable cause.

At the suppression hearing, the government explained that the confidential informant had been wired

during the transaction in question; that information, however, was never communicated to the

magistrate judge issuing the search warrant and was never explicitly referenced in the affidavit

supporting the search warrant. Thus, the government conceded that "the court can't really consider

[the informant's wire] . . . ."[2] The district court, emphasizing that it was only looking to the four

corners of the affidavit, concluded that there was probable cause to support the search warrant.

Henry subsequently accepted a conditional plea agreement, pleading guilty to possession of a

controlled substance with intent to distribute and being a felon in possession of a firearm, but

reserving the right to appeal the district court's denial of his motion to suppress.

"In reviewing a district court's suppression determination, we review findings of fact for

clear error, and legal conclusions *de novo*." *United States v. Moon*, 513 F.3d 527, 536 (6th Cir.

2008). "Generally, the Fourth Amendment requires police officers to obtain a warrant prior to

conducting a search." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). "A warrant will

be upheld if the affidavit provides a 'substantial basis' for the issuing magistrate to believe 'there

is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*.

at 652 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The probable cause standard is a

'practical, non-technical conception' that deals with the 'factual and practical considerations of

everyday life.'" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *Gates*, 462 U.S.

---

[2]The government was careful, however, to condition that statement by noting that it was making such a concession based on its understanding of the district court's prior ruling.

at 231). In turn, when a warrant is supported by an affidavit, "[c]ourts should review the sufficiency of the affidavit in a commonsense, rather than hypertechnical manner." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). Furthermore, "review of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Id*. Thus, "[t]o justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). That being said, "our review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit." *Frazier*, 423 F.3d at 531 (6th Cir. 2005).[3]

This court has previously explained that "in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *Id*. at 532.[4] "However, this independent police corroboration may be established by a police-monitored

---

[3]Importantly, *Frazier* addressed a circumstance where a confidential informant recorded the transactions in question, but those recordings were not referenced in the affidavit supporting the search warrant. 423 F.3d at 531. Thus, this court explained that it could not consider any testimony from law enforcement officers stating that the confidential informant had recorded the transactions. *Id*. For similar reasons, the fact that the confidential informant in this case appears to have worn a wire does not factor into our analysis as it was neither referenced in the affidavit, nor was it mentioned to the magistrate judge issuing the warrant.

[4]While it is true that Officer Reece described the confidential informant as "reliable" in his affidavit, he failed to explain the grounds for this characterization. Thus this characterization provides significantly less corroboration of the confidential informant's reliability than the characterization in *United States v. Pinson*, where the officer stated in the affidavit that he "kn[ew] said CI [was] reliable from past information received from said CI," 321 F.3d 558, 561 (6th Cir. 2003), or the characterization in *United States v. Allen*, where the officer stated that he knew the CI for five years and that "said informant ha[d] given [the officer] information about individuals

controlled buy . . . ." *United States v. Hawkins*, No. 07-3634, 2008 U.S. App. LEXIS 11439, at \*16 (6th Cir. May 23, 2008).  Indeed, law enforcement officers frequently employ controlled purchases of illegal narcotics in order to establish probable cause in circumstances where they cannot personally vouch for the reliability and credibility of a particular confidential informant.  *See, e.g.*, *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006) (concluding that "corroboration of events that occurred during the controlled buy, as set forth in the affidavit, provide sufficient probable cause to sustain issuance of the search warrant"); *United States v. Coffee*, 434 F.3d 887, 894 (6th Cir. 2006) (affirming the district court's conclusion that even though there were no statements in the affidavit about the reliability of the CI, "[the officer's] statements that he set up the controlled buy and took necessary precautions before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant"); *United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003) (noting that "the affidavit in th[e] case contained [the officer's] personal observation, his pat down of the informant before and after the purchase of the narcotics, and the fact that the drugs purchased by the

---

involved in criminal activity in the past that ha[d] proven to be reliable." 211 F.3d 970, 971 (6th Cir. 2000) (*en banc*).  Thus for the warrant to have been supported by probable cause, the CI's reliability hinges primarily on the independent police corroboration stemming from the controlled buy at the residence. *See also United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002) ("[C]haracterizations, standing alone without any supporting factual information, merit absolutely no weight and that information obtained from a reliable source must be treated as information obtained from an informant of unknown reliability." (internal quotation marks and citation omitted)).

confidential informant were later tested positive for cocaine base").[5]

While in some cases the independent corroboration detailed in an affidavit has included a wire worn during the controlled purchase, *see, e.g.*, *Jackson*, 470 F.3d at 308, "the affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Pinson*, 321 F.3d at 562 (6th Cir. 2003) (quoting *Allen*, 211 F.3d at 975). In a recent unpublished case, this court held that two controlled purchases were sufficient to corroborate the reliability of a confidential informant despite the fact the informant did not wear a wire during the purchase. *Hawkins*, 2008 U.S. App. LEXIS 11439, at *17 (concluding that officers took the "necessary precautions before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant" (quoting *Coffee*, 434 F.3d at 894 and citation omitted)). In addition, this court found sufficient independent corroboration where law enforcement officials conducted only one controlled purchase and listened to the controlled purchase via a listening device. *See Jackson*, 470 F.3d at 307.[6] Admittedly, in the instant case, the affidavit only details one controlled purchase and fails to mention whether law enforcement officials monitored the purchase with a listening device. That

---

[5]For this reason, although Henry cites on a number of occasions to *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993), the case is readily distinguishable. Most notably, law enforcement officials did not conduct a controlled purchase in *Leake* but instead relied upon an anonymous caller who provided information that was not "rich" in detail. *Id*. at 1365.

[6]In addition, in *Jackson*, the court found sufficient corroboration despite the fact that the affidavit supporting the search warrant failed to attest to any reliable track record of the confidential informant. *Jackson*, 470 F.3d at 307. While the court in *Jackson* did, in part, rely on the fact that the informant wore a monitoring device during the purchase, the court's conclusion in *Jackson* would appear to undermine Henry's claim that attestation to the informant's track record is necessary to support a finding of probable cause. (*See* Appellant's Br. 19-22).

notwithstanding, and in reliance on both *Hawkins* and *Jackson*, under the totality of the circumstances in this case, the single controlled purchase was sufficient independent corroboration of the confidential informant. Thus, the warrant was supported by probable cause.

Henry additionally argues that the affidavit supporting the search warrant was insufficient to establish probable cause because the officers allowed the confidential informant to travel to the residence in his own vehicle but failed to inspect the vehicle prior to the controlled purchase. (Appellant's Br. 25). It is true that in other cases addressed by this court, law-enforcement officers were careful also to inspect the confidential informant's vehicle prior to the controlled purchase. *See, e.g.*, *United States v. Sales*, 247 F. App'x 730, 734 (6th Cir. 2007) (noting that the officers "searched the CI and her/his vehicle for drugs before and after the buy"). However, the officers did search the informant himself both before and after the controlled purchase. They provided him with previously photocopied money and conducted surveillance before, during, and after the controlled purchase. Under such circumstances, it would seem that there was indeed a "fair probability that contraband or evidence of a crime w[ould] be found in a particular place." *See Gates*, 462 U.S. at 238 (1983). Indeed, to reject the district court's finding of probable cause would be tantamount to reviewing the sufficiency of the affidavit in a hypertechnical manner instead of employing common sense and relying on the totality of the circumstances. *See Greene*, 250 F.3d at 479.[7]

---

[7]Henry also appears to make an argument about the staleness of the evidence underlying the search warrant. (Appellant's Br. 18). This court, however, has upheld search warrants under similar circumstances where the controlled purchase in question had occurred in the 72 hours prior to the issuing of a search warrant. *See, e.g.*, *United States v. Harvey*, 2007 U.S. App. LEXIS 11041, at *11 (6th Cir. May 7, 2007) (finding that probable cause did not become stale where the informant observed criminal activity within 72 hours prior to submission of affidavit); *Jackson*, 470 F.3d at 308 (finding three-day period between controlled buy and issuance of search warrant reasonable); *United*

For the foregoing reasons, we affirm the district court's denial of Henry's motion to suppress.



*States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003) (holding that information regarding drug dealing that was "at most four days old" at time of search was not stale).