NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0483n.06

No. 22-1143

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 30, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| COREY ANDRE CHANDLER II, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SILER, GILMAN, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Michigan troopers stopped a car that Corey Chandler was driving. They searched it and found seven kilograms of methamphetamine. Based on that evidence, a federal grand jury charged Chandler with three drug-related counts. Chandler challenged the traffic stop in a motion to suppress, which the district court denied. Then, Chandler conditionally pleaded guilty to possessing with intent to distribute 50 grams or more of methamphetamine. He reserved the right to appeal the denial of his motion to suppress and now appeals. Because the officers had both probable cause and reasonable suspicion to stop the car, we affirm.

**I.**

Corey Chandler and Darrell Martin transported methamphetamine from Arizona to Michigan as part of a drug conspiracy. In June 2020, the West Michigan Enforcement Team ("WEMET"), a drug taskforce, received a tip from an individual, who identified himself and his connection to Martin, about a phone call he had with Martin. The individual explained that Martin planned to drive from California to Michigan and arrive on July 3 with a large quantity of

methamphetamine. Following up on that lead, the officers discovered that Martin had been convicted of other narcotics charges.

WEMET then got a warrant to monitor Martin's phone and tracked it to a suburb outside Phoenix, Arizona, on July 1, 2020. And they also discovered that, while in Arizona, Martin had used a 2020 Nissan Pathfinder. His girlfriend had rented that car from Avis, but surveilling officers never saw her in Arizona. On July 3, the date the original tip suggested, Martin flew back to Michigan. But he left the car (unreturned to Avis) in Arizona. Martin returned to Arizona on July 6.

While the investigation of Martin was underway, a criminal defendant in federal custody made a proffer to DEA Grand Rapids. The proffering defendant told the DEA that he had been shipping large amounts of methamphetamine from Arizona to Michigan. And he explained that Chandler had traveled multiple times with him to Arizona to purchase methamphetamine. Camera footage backed up that the two had been together. What's more, officers discovered that Chandler, like Martin, had a record of narcotics convictions.

At any rate, officers didn't know where Chandler was. But they knew where Martin was. That's because Martin's phone started showing movement from Arizona to Michigan on July 12. Martin was in the Nissan Pathfinder. WEMET contacted the Michigan highway patrol to stop the car when it got to Michigan because WEMET believed the car contained methamphetamine.

On July 13, 2020, the Michigan highway patrol troopers stopped the Nissan Pathfinder for two reasons. First, the troopers believed that there was reasonable suspicion that the vehicle carried narcotics. Second, the troopers thought that the Nissan Pathfinder had committed two traffic infractions, one for concealing the state of registration on the license plate and one for following another car too closely.

When Michigan highway patrol stopped the car, Chandler was driving, and Martin was in the passenger seat. Another individual was in the back seat. One of the state troopers asked Chandler to speak with her in the patrol car. The trooper asked him some questions and explained that he was not free to leave her patrol car because he had an outstanding warrant in another case.

At the same time, the troopers asked Martin and the other passenger about the purpose of their trip. They gave conflicting stories. The troopers found out that Martin also had an outstanding warrant for his arrest. At some point, a canine sniffed the car. The canine signaled that narcotics were in the car. So troopers searched the vehicle. They found a backpack containing $13,000 and a screwdriver, but no drugs. The troopers let Chandler, Martin, and the other passenger go on foot. But the troopers kept the car and conducted another search of the car at a gas station. Again, they didn't find any drugs.

Next, plain-clothes officers nearby watched Martin's subsequent movement at a fast-food restaurant. An officer heard Martin call someone and say, "[T]he shit was still in there, a metal plate, x-ray machine, the dog hit on it, and I told them I had his money." (R. 108, Suppression Transcript, p. 119.) The officer believed that, based on this phone call, drugs were hidden in the vehicle. This prompted the officers to search the car once more, this time at the impound lot. And this time they found over seven kilograms of methamphetamine hidden in the car.

## II.

On that basis, a federal grand jury charged Chandler with one count of conspiracy to distribute and possess with intent to distribute methamphetamine and two counts of possession with intent to distribute methamphetamine. Chandler moved to suppress the evidence as fruit of an illegal stop and search.

After a hearing, the district court denied the motion to suppress. First, it held that there was reasonable suspicion that drugs were in the car to make the initial stop. Second, it held that the canine sniff didn't delay the traffic stop and that probable cause existed to search the car. And, third, because the canine sniff alerted the officers that drugs were present and because Martin's phone call reflected drug activity, the court held that there was probable cause for the search of the car at the impound lot.[1]

After the denial of his motion to suppress, Chandler pleaded guilty to a single count of possessing with intent to distribute 50 grams or more of methamphetamine, with the right to "seek review of the adverse determination of his motion to suppress." (R. 46, Plea Agreement, p. 1.)

So Chandler timely appealed.

### III.

In reviewing a motion to suppress, we review a district court's factual determinations for clear error, and we review the district court's legal determinations de novo. *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir. 1993). And our review of probable cause and reasonable suspicion is de novo. *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008); *Ross v. Duggan*, 402 F.3d 575, 585 (6th Cir. 2004). Because the district court denied Chandler's motion to suppress, we view "the evidence in the light most favorable to the government." *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006).

Chandler appeals three issues: (1) Whether the officers had reasonable suspicion of a civil infraction to stop the Nissan Pathfinder; (2) Whether the officers had reasonable suspicion of ongoing criminal activity to conduct an investigatory stop of the vehicle; and (3) Whether the

---

[1] The district court also suggested that the automobile exception would apply. But we won't address that issue because Chandler challenges only the initial stop, not any subsequent search.

officers had probable cause to search the vehicle. Although Chandler listed this third issue on appeal, his only briefed argument on the point is that because the stop was invalid, any evidence recovered after the stop was fruit of the poisonous tree. Chandler does not make the alternative argument that even if the initial stop was valid, any (or all) of the officers' later search(es) were nonetheless unreasonable. So we limit our review to the validity of the initial traffic stop. *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir.) (refusing to consider issues that are not briefed), *cert. denied*, 528 U.S. 897 (1999).

To start, Chandler's presentation of the issues confuses the legal standard. This case implicates two distinct avenues for permissible traffic stops under the Fourth Amendment. First, an officer can lawfully stop a vehicle if she has probable cause of a civil infraction. *United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016) (citation omitted). Second, an officer can lawfully stop a vehicle if she has reasonable suspicion of an ongoing crime. *Id.* at 253–54 (citation omitted). So Chandler must show that there was neither probable cause of a traffic violation nor reasonable suspicion of drug activity to prevail on his motion to suppress. And he can't make either showing.

Start with probable cause. Probable cause means that there is a fair probability, looking at the totality of the circumstances, of legal wrongdoing. *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citation omitted). The troopers stopped the Nissan Pathfinder because it was violating a state statute that requires a license plate to "be maintained free from foreign materials that obscure or partially obscure the registration information[.]" Mich. Comp. Laws § 257.225(2). That statute also prohibits any "name plate, insignia, or advertising device attached to a motor vehicle registration plate" from "obscur[ing] or partially obscur[ing] the registration information." *Id.* § 257.225(5).

At the suppression hearing, the trooper who conducted the stop explained that the license-plate holder on the Nissan Pathfinder obstructed the plate. And the Government introduced a corroborating photograph of the Nissan Pathfinder's tag at the hearing. The trooper explained that she regularly stopped drivers for violating this statute. In sum, all these facts added up to a "fair probability" of a traffic infraction. *Jackson*, 470 F.3d at 306 (citation omitted). So probable cause existed to conduct the traffic stop.[2]

To rebut this straightforward probable-cause showing, Chandler first argues that the Michigan statute only applies to in-state license plates. Not so. That limitation is nowhere enumerated in the text of the statute. And at least one Michigan appellate court has applied the statute to an out-of-state tag. *See People v. Bishop*, No. 284303, 2008 WL 5046864, at *1, *4 (Mich. Ct. App. Nov. 25, 2008). Chandler also argues that no traffic violation occurred because the Nissan Pathfinder's license plate was still visible to the officers. But the Michigan Supreme Court has rejected this argument. *People v. Dunbar*, 879 N.W.2d 229, 232, 235 (Mich. 2016) (explaining that when a license plate is "obstructed," a violation of the statute has occurred). And Chandler admits that the state of registration was "partially covered." (Appellant's Br. at 22.) In short, Chandler's attempts to challenge probable cause fail.

And now to reasonable suspicion. When there is a "particularized and objective basis" to suspect legal wrongdoing based on the "totality of the circumstances," reasonable suspicion exists. *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). A plethora of evidence created reasonable suspicion to stop the Nissan Pathfinder. After speaking on the phone with Martin, an individual who gave his name and explained his

---

[2] Because probable cause of the license-plate statute is sufficient for a traffic stop, we need not address the other ground that the officers gave for the stop—that Chandler was following another car too closely.

connection to Martin provided a tip to the officers about specific travel dates and locations for Martin's methamphetamine distribution. On top of this, Martin had prior drug convictions. In other words, the officers knew about Martin's past drug activity plus the tip's forecast of future drug activity. And key to the reasonable-suspicion finding, Martin soon flew back to Michigan on the day the tip predicted.

But that's not all. Martin's travel activity was strange. During the peak of coronavirus, he went back and forth from Arizona to Michigan. While in Arizona, Martin used a Nissan Pathfinder that his girlfriend—not he—had rented. And officers never saw the girlfriend in Arizona. But he mysteriously left the Nissan Pathfinder behind. Three days later, Martin returned to Arizona only to make the cross-country car trip back to Michigan in the rented Nissan Pathfinder.

In the end, the officers identified these facts as creating reasonable suspicion. And we agree. These facts, along with Martin's drug-dealing history, provide a "particularized and objective basis" to suspect that Martin was engaged in legal wrongdoing. *Arvizu*, 534 U.S. at 273 (citation omitted); *see also United States v. Stepp*, 680 F.3d 651, 655 (6th Cir. 2012) (explaining that a car "occupants' past history of narcotics activity and their vague travel plans . . . support[ed] the existence of reasonable suspicion").

In sum, the traffic stop was proper under either a probable-cause or reasonable-suspicion theory.

So we **AFFIRM** the district court's judgment.