NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0149n.06
Filed: February 19, 2009

No. 07-5624

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| DANA P. GREGORY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant-appellant Dana P. Gregory was convicted by jury and sentenced to 511 months of imprisonment for being a felon in possession of approximately two hundred firearms (Counts One and Two); possessing with intent to distribute oxycodone (Count Four); possessing firearms, including a machine gun, in furtherance of Count Four (Counts Five and Six); possessing a machine gun (Count Seven); and possessing contraband, including a hypodermic needle, syringe, and razor blade, that were designed or intended to be used as weapons or to facilitate escape from the detention center housing him (Count Eight). He appeals his convictions and sentence on Counts Four through Eight.

As grounds for his appeal, defendant Gregory contends that the drug and firearms evidence used against him at trial was illegally obtained and should have been suppressed; the district court erred in denying his motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure; and the sentence imposed by the district court was unreasonable.

For the reasons that follow, we affirm the appealed rulings of the district court.

I.

On September 12, 2006, a grand jury returned a nine-count superseding indictment charging Gregory with being a felon in possession of more than two hundred firearms, in violation of 18 U.S.C. § 922(g)(1) (Counts One and Two); conspiring to distribute oxycodone, in violation of 21 U.S.C. § 846 (Count Three); possessing with intent to distribute oxycodone, in violation of 21 U.S.C. § 841 (Count Four); possessing firearms, including a machine gun, in furtherance of Count Four, in violation of 18 U.S.C. § 924(c)(1) (Counts Five and Six); possessing a machine gun, in violation of 18 U.S.C. § 922(o) (Count Seven); and possessing contraband, including a hypodermic needle, syringe, and razor blade, that were designed or intended to be used as weapons or to facilitate escape from the detention center housing him, in violation of 18 U.S.C. § 1791(a)(2) (Counts Eight and Nine).

Prior to trial, Gregory moved to suppress the drug and firearm evidence obtained from three searches of his home and a storage unit he leased. He maintained that the magistrate judge lacked probable cause to issue the warrants authorizing the searches because the warrant affidavits were based on conclusory, stale, and unreliable information. In a footnote to his motion to suppress,

Gregory also argued the possibility that law enforcement provided false information to the magistrate judge and reserved the right to seek an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).[1]

At the evidentiary hearing on his motion to suppress, Gregory, represented by newly appointed counsel, did not make a facial challenge to the sufficiency of the warrant affidavits as argued in his motion; rather, he asserted that the information in the affidavits was "misleading" and that the testimony he intended to elicit from law enforcement officers would "go to a potential *Franks* hearing." The government objected on the ground that Gregory failed to make the "substantial preliminary showing" required to justify an evidentiary hearing under *Franks*.

The magistrate judge then re-read the motion to suppress at the bench and determined that, although the motion suggested that defense counsel might at some point move for an evidentiary hearing under *Franks*, it did not explicitly request such a hearing, nor did it attempt to make the

---

[1]*Franks* held that:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56.

required preliminary showing. Accordingly, the magistrate judge ruled that "*Franks* is not a ripe issue" and that any evidence and argument relating to the probable cause determination was "necessarily limited to the four corners of the affidavits."

Defense counsel apologized to the court "for not following up" properly on former counsel's suggestion to investigate or acquire the evidence that would allegedly justify a *Franks* hearing and sought additional time to file a motion requesting such a hearing. The magistrate judge granted defense counsel's request, extended the case's pretrial motions deadline for three weeks, and asked Gregory whether its ruling was "satisfactory," to which he answered, "Yes, Sir." Defense counsel never filed the motion.

In his Report and Recommendation ("R&R"), the magistrate judge recommended that Gregory's motion to suppress evidence relating to the first and third search warrants be denied.[2] The magistrate judge found the affidavits "suggest[ed] that, more likely than not, firearms and drugs would be found in defendant's house and storage unit."

In making this determination, the magistrate judge relied upon the representations of Special Agent Greg Moore of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the affiant of both search warrant applications. In his affidavit for the first search warrant requesting authorization to search Gregory's home, Special Agent Moore stated that numerous named law enforcement officers conveyed to him that Gregory had a long criminal history, including convictions for drug trafficking,

---

[2] The R&R did not address the lawfulness of the second search warrant because the government agreed not to introduce evidence seized from its execution of that warrant. The second search warrant is not relevant to Gregory's appeal.

possession of prohibited firearms, and aggravated burglary, and was once involved in a "shootout" with a police officer who was investigating him. Gregory was reputed to be a "a major drug dealer" who "always keeps a large supply of guns." His neighbors, including a police officer who lived across the street and another officer who resided in the same neighborhood, consistently observed "suspicious activity" at his home. The officers witnessed:

> people pulling up to the residence, which has a high privacy fence, and throwing a plastic bag over the fence. A short time later, another plastic bag will come back over the fence from Gregory's residence. The car will then leave and the officers have observed on several occasions, Gregory come out from the house as the car starts to drive away and look around the area.

Many of the individuals engaging in this activity were "known by law enforcement officials to be users of illegal drugs."

Several individuals conveyed to Special Agent Moore or to the officers he interviewed that they saw stolen property, firearms, and drugs, including oxycontin and marijuana, at Gregory's home and that they witnessed, or admitted to participating in, trading stolen property to Gregory in exchange for oxycontin. The victim of an arson allegedly committed by Gregory informed the investigating detective that defendant "kept more guns in his house than were owned by the Church Hill Police Department." Gregory's home was " known to law enforcement as the only brick house [in the area] that has a high wooden privacy fence surrounding the property, vehicles at various stages of operability parked on the property, and a warning sign of the presence of security dogs."

In his third affidavit, which requested a warrant to search a storage unit Gregory leased, Special Agent Moore restated the information contained in his first affidavit. The affidavit added

that, while executing the first search warrant, Special Agent Moore, along with other officers, seized fifteen firearms, most of them fully loaded, as well as a machine gun with fully loaded clip magazines, and several hundred rounds of ammunition from defendant's home. At least one of the firearms appeared to be stolen. Officers also recovered twenty-two oxycontin pills, marijuana, and literature on making explosive devices.

The third affidavit also stated that because of the media attention surrounding the first search, citizens "with no criminal affiliation," including one who provided "credible" information in the past, called local law enforcement officials and informed them that Gregory stored guns, drugs, and bomb-making materials in a nearby storage unit. According to the affidavit, these citizen tips, along with the explosive device literature recovered from defendant's home and his suspected connection to bomb-making activities, suggested that "Gregory had an interest in bomb-making" and "raised additional concerns as to whether or not Gregory may be in possession of hazardous or explosive materials at some location."

Based on these fears, the affidavit asserts that Mark Johnson, chief and public safety director of the Church Hill Police Department, called local storage companies and inquired whether Gregory leased a storage unit from them. When one company confirmed that he presently did, Chief Johnson visited the facility housing the unit.

According to the affidavit, when Chief Johnson advised the owner of the facility that defendant "could be storing guns and bomb-making material inside" his unit, the owner responded that the rental contract permitted him to "inspect the unit should there be any information that the

contents might be harmful to others or adjoining units" and that it "specifically prohibited the occupant from storing 'flammable, combustible explosives, inflammable liquid, [or] contraband' within the unit." The owner then cut the lock on the unit and "observed a large quantity of guns as well as green military ammo cans with 'EXPLOSIVES' and 'explosive symbols' written on some of them." Thereafter, law enforcement secured but made no entry into the unit. A drug-detecting police dog and his handler were called, and while searching the exterior of the closed unit, the dog "alerted" his handler to the possible presence of illegal drugs.

The R&R recommending denial of the motion to suppress provided notice that "[a]ny objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived." Gregory did not file objections to the R&R, and more than twenty days after the magistrate judge entered it, the district court approved and adopted it, specifically noting in its order that "[t]he defendant has not filed objections to this report."

Numerous witnesses testified at trial. Special Agent Moore corroborated the information set forth in his warrant affidavits and testified that while searching the storage unit, "we were confronted with probably the largest collection of guns I have seen in almost 15 years . . . in one storage unit. It was impressive." He stated that agents seized approximately 190 firearms, all of them manufactured outside of Tennessee, 17,000 rounds of ammunition, and a container for a surface-to-surface missile. Agents also recovered documents and military manuals on "unconventional warfare devices and techniques," "booby traps," and "munitions."

Seven witnesses, including Gregory's long-time friends and neighbors, testified that he supplied them with oxycodone, cocaine, methadone, hydrocodone, and morphine in exchange for their cash, labor, or stolen merchandise, which included guns, construction equipment, and tools. One witness spent "[m]ost of my whole [pay]check" to purchase oxycontin pills from Gregory. Another purchased "thousands" of oxycontin pills from him over a two-year period. A third witness paid cash to Gregory for oxycontin every day and set a truck on fire for him in exchange for $500 worth of the drug. The arson victim testified that on the day of the crime, he was supposed to testify in court against Gregory in an unrelated case and that the fire destroyed both his truck and mobile home. A fourth witness testified that Gregory gave him oxycontin in exchange for filing a false police report against one of defendant's enemies.

Witnesses consistently confirmed that they saw firearms and illegal drugs in Gregory's house and that he carried a gun with him all the time, made it known that he was carrying a gun, and bragged that he had enough firearms "to start an army." A witness identified two firearms recovered from Gregory's storage unit as guns that had been stolen from him. Defendant told one witness that he kept a camper, dump truck, and forklift in his yard and in the road in front of the gate to his home as "kind of a barrier so bullets couldn't come through" and so that no one could "crash through the gate."

The owner and manager of the storage unit corroborated the information set forth in the affidavit requesting the third search warrant. Specifically, they testified that the lease prohibited tenants from storing flammable, combustible, or explosive items in their units and allowed

management to enter a storage unit without notice or consent in the event of an emergency. They also confirmed that officers conveyed to them that they "thought" or "believed" that there were explosives in the unit and that the officers peered into the unit but did not enter it after cutting the lock and before obtaining the search warrant.

Gregory's cell mate testified that while in federal custody on the charges in this case, Gregory attempted to conspire with him to escape from the jail. According to the inmate, Gregory planned to inject a syringe containing bleach into the necks of named officers when they entered the cell to serve food. The cell mate also stated that Gregory attempted to obtain a gun in jail and asked him to transport oxycontin after escaping.

The inmate reported the escape plan to jail personnel, who searched Gregory's cell and found a fully-intact syringe, a razor blade, another needle from a syringe, twist ties, ink pens, and nail clippers, all of them in concealed locations. A deputy United States marshal testified that inmates are not permitted to possess these items and that they can be used as weapons.

At the close of the government's case-in-chief, Gregory renewed his motion to suppress the evidence obtained from the first and third searches of his home and storage unit and moved for acquittal on all counts, except Counts One and Two, under Rule 29 of the Federal Rules of Criminal Procedure.[3] As to his request to suppress evidence, Gregory asserted that Special Agent Moore secured the search warrants through deception and unreliable information and that the trial itself

---

[3]Rule 29 provides, in relevant part, that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

constituted a "*Franks* hearing." He particularly contested the admission of evidence found in the storage unit on the alleged ground that the police deceived the owner and manager of the storage facility into believing that the unit contained bombs and explosives. The government responded that the trial was not a *Franks* hearing and that it did not introduce all evidence relevant to such a hearing.

The court then remarked that the affidavit was based on information "from an informant who had passed on credible information in the past that there [were] both guns and bomb making material stored in the storage unit" and questioned defense counsel about why he believed Special Agent Moore acted with "reckless disregard." Counsel simply responded that no one was caught entering or leaving Gregory's home with stolen goods. Thereafter, the court ruled that Gregory failed to make the showing required to entitle him to a *Franks* hearing because the portions of the affidavit that he characterized as false or misleading "in fact appear to be true statements" and that even if the allegedly "offending" information were excised from the affidavit, "[t]here is other ample information in this affidavit to establish probable cause."

The jury convicted Gregory on all counts except the conspiracy charge in Count Three.[4] He filed no objections to the presentence investigation report ("PSR") and confirmed at sentencing that the information contained in it was correct.[5] The court sentenced him to 511 months of imprisonment, and he made no objection to the sentence imposed.

---

[4]Prior to trial, the district court granted the government's motion to dismiss Count Nine.

[5]The parties stipulated that Gregory was previously convicted of a crime punishable by a term of imprisonment exceeding one year.

Gregory timely appealed.

II.

Gregory first contends that the district court erred in denying his motion to suppress the drug and firearm evidence recovered from his home and storage unit. We affirm the district court's ruling on the alternative grounds that Gregory's challenges to it are both waived and meritless.

A.

Gregory waived his challenge to the district court's denial of his motion to suppress because he failed to object to the R&R recommending that the motion be denied and failed to request or make the required preliminary showing entitling him to a *Franks* hearing. Under 28 U.S.C. § 636(b)(1)(C), "any party may serve and file written objections" to the R&R "[w]ithin ten days after being served with a copy." A party who fails to object to the R&R waives its right to appeal any issue addressed in the R&R, so long as the non-objecting party received notice of the consequences of failing to object. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001) (citing *United States v. Walters*, 638 F.2d 947, 949 (6th Cir. 1981)). *See also Thomas v. Arn*, 474 U.S. 140, 142 (1985) (holding that "a court of appeals may exercise its supervisory powers to establish a rule that the failure to file objections to the magistrate's report waives the right to appeal the district court's judgment"). Because the R&R unambiguously warned that any objections "must be filed within ten

days of its service or further appeal will be waived" and Gregory filed no objections, we hold that

his right to appeal the district court's denial of his motion to suppress is waived.[6]

B.

Even if Gregory did not waive his challenges to the district court's denial of his motion to

suppress, we hold that they are meritless because probable cause supported the issuance of both

search warrants.

The Fourth Amendment provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be
> seized.

U.S. CONST. AMEND. IV. Probable cause exists if there is a "fair probability" or "reasonable grounds

for belief, supported by less than prima facie proof but more than mere suspicion" that police will

find evidence of a crime at the location of the proposed search. *United States v. Jackson*, 470 F.3d

299, 306 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) and

*United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)) (internal quotations omitted). The

---

[6]Regarding the *Franks* issue in particular, we note that, despite defense counsel's apology to the court for not properly requesting or making the required preliminary showing to justify a *Franks* hearing and the court's extension of its pretrial motions deadline to give him the opportunity to file a motion under *Franks*, he inexplicably failed to file the motion. Even at trial, defense counsel attempted to circumvent the "substantial preliminary showing" required to entitle his client to a *Franks* hearing, *see Franks*, 438 U.S. at 155-56, by improperly characterizing the trial itself as a "*Franks* hearing." In light of such maneuvering, we are puzzled that counsel now attempts to raise the same issue on appeal that he failed to properly raise numerous times before the district court.

probable cause determination is limited to the information set forth in the four corners of the affidavit, *Jackson*, 470 F.3d at 306, and the sufficiency of the search warrant affidavit is judged based on the "totality of the circumstances, rather than line-by-line scrutiny." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). Affidavits for search warrants:

> [m]ust be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.

*Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

A magistrate judge may rely on hearsay evidence in making his probable cause determination as long as such evidence is truthful, reliable, and has an adequate basis. *Jackson*, 470 F.3d at 306; *Coffee*, 434 F.3d at 892-93. Moreover, even where law enforcement does not name an informant in the affidavit or receives information from an informant whose reliability is not established, probable cause may exist "when there is some independent corroboration by the police of the informant's information." *Jackson*, 470 F.3d at 307 (quoting *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000)).

We review the district court's findings of fact on a motion to suppress for clear error and its conclusions of law de novo. *Jackson*, 470 F.3d at 306. We consider the evidence "in the light most favorable to the government," *id.* at 306-07, and afford "great deference" to the magistrate judge's determination of probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). His discretion will be reversed only if "arbitrarily exercised." *Allen*, 211 F.3d at 973.

1.

Regarding the first search warrant, Gregory argues that the magistrate judge should not have considered his alleged prior criminal history; that the information in the affidavit was stale; that the evidence presented at trial differed from the information presented in the affidavit; that the government failed to offer proof at trial that he traded drugs for guns; that witnesses interviewed by law enforcement were not reliable; that law enforcement never recovered drugs or firearms in the year-and-a-half period that they conducted surveillance of his property; and that Special Agent Moore made false and misleading statements in his affidavit.

All of these arguments lack merit for several reasons. First, they erroneously conflate the sufficiency of the evidence presented at trial with the "fair probability" and "reasonable grounds" standard required to justify the issuance of a search warrant. Second, they improperly attack the credibility of witnesses, which is a function of the jury at trial, not the role of the judge making the preliminary, baseline determination about whether "probable cause" exists to issue a search warrant. *See United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004) (stating that "determining the credibility of witnesses is a task for the jury, not [the] court"). Third, the magistrate judge unambiguously recognized in his R&R that the representations in the affidavit about Gregory's prior dealings with drugs and firearms were stale but concluded that "the information was not intended to be, nor was it considered by the issuing magistrate judge to be, anything other than supplying context to the more current information provided" in the affidavit. That finding was not clearly erroneous. *See United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988) (holding that

probable cause may be found where "recent information corroborates otherwise stale information" and that "time is of less significance" where the "affidavit recites activity indicating protracted or continuous conduct"). Finally, Special Agent Moore's twelve-page affidavit was truthful and thorough. The affidavit identified six law enforcement officers with whom Special Agent Moore communicated, described in detail the suspicious activity that occurred over several years at Gregory's home, and relayed the substance of Special Agent Moore's communications with named officers and civilian witnesses, including witnesses known by law enforcement to be users of illegal drugs, who stated that they observed firearms and illegal drugs in Gregory's home and on his person and that he provided them with illegal drugs.

Because we hold that probable cause supported the issuance of the first search warrant, the district court properly denied Gregory's motion to suppress the evidence seized from executing it.

2.

Regarding the third affidavit in support of the search warrant of his storage unit, Gregory contends that its information was based on a prior illegal warrantless search of that unit. Specifically, he argues that law enforcement relied on "uncorroborated hearsay" to persuade the owner and manager of the storage facility that the unit contained explosives, thereby causing them to cut its lock so that officers could observe its contents. By purportedly manipulating the owner and manager to perform an act that law enforcement could not, Gregory maintains that law enforcement illegally circumvented the warrant requirement.

Again, Gregory's arguments are factually inaccurate and lack merit. According to the affidavit, "citizens with no criminal affiliation," including an unnamed individual thought to have provided police with "credible" information in the past, informed police that Gregory "had a local storage unit where he stores guns and bomb[-]making material." Based on that information and the numerous firearms, machine gun, and bomb-making literature found in Gregory's home during their execution of the first search warrant, police were justified in pursuing the callers' leads. They then confirmed that Gregory did, in fact, lease a storage unit, thereby corroborating in part the reliability of the tips. At this point, police had probable cause to obtain a search warrant, and their subsequent conduct is irrelevant.

Officers merely acted prudently in acquiring additional information before requesting the warrant and entering the storage unit. Contrary to Gregory's assertion that police "told" the owner and manager of the storage facility that the storage unit contained explosives, the owner and manager both testified, consistently, that the police advised them only that "they had reason to believe," "suspected," or "thought there was a possibility" that there were explosives in the unit. No testimony or other evidence presented at trial suggested that the police demanded entry into the storage unit or gained access to it through false pretenses. *Cf. United States v. Soto*, 124 F. App'x 956, 960-61 (6th Cir. 2005) (articulating the principle that a search based on consent is valid where the consent was "freely and voluntarily given" and "uncontaminated by duress, coercion, or trickery.") (unpublished). Indeed, the owner testified that "I have the right to go into that unit if there's any – you know, if there's any emergency or anything of that nature or if there's any reason to believe that there's

something, I guess, there that shouldn't be there." In our view, the exigencies of the circumstances in fact would seem to *require* it.

Even when the owner cut the lock on the storage unit, law enforcement did not enter it; rather, they secured the unit for safety, observed from its exterior a large quantity of guns and containers with the label "explosives," as well as explosive symbols, requested a drug-sniffing police dog, who alerted his handler to the presence of illegal drugs while searching the external perimeter of the closed unit, and then obtained a search warrant. The additional information police obtained before requesting the search warrant was more than adequate to support the magistrate judge's probable cause determination.

Because we hold that probable cause supported issuance of the third search warrant, the district court properly denied Gregory's motion to suppress the evidence seized from executing it.

III.

Gregory next contends that the district court erred in denying his motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure regarding the drug trafficking, firearms, and possession of contraband charges in Counts Four through Eight.

A.

In arguing that the district court should have acquitted him as a matter of law, Gregory first attacks the credibility of witnesses at trial and the methods by which law enforcement obtained the search warrants. He asserts that the evidence at trial "clearly demonstrated that the government's

witnesses were unreliable and that law enforcement had used deceptive and misleading information to obtain warrants and an indictment." The arguments lack merit.

We have stated that "determining the credibility of witnesses is a task for the jury, not this court," *Beverly*, 369 F.3d at 532, and that "attacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence." *United States v. Farley*, 2 F.3d 645, 652 (6th Cir. 1993). Moreover, we are required to make credibility determinations in support of the verdict. *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).

Our review of the record below does not support Gregory's characterization of the testimony and procedures upon which the indictment, warrants, and convictions were based as "unreliable, deceptive, or misleading." In fact, the evidence presented at all pre-trial hearings and at trial was wholly consistent.

Accordingly, the district court did not err in denying Gregory's Rule 29 motion for judgment of acquittal on this ground.

### B.

Gregory also contends that the evidence at trial was insufficient to support his convictions. We review de novo a district court's denial of a Rule 29 motion based on insufficient evidence and assess the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Campbell*, 549 F.3d at 374. We "will reverse a judgment based on a finding of insufficient evidence

only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* Further, all reasonable inferences must be made to support the verdict. *Id.*

1.

Regarding his conviction of possession with intent to distribute oxycontin (Count Four), Gregory complains that law enforcement recovered only twenty-two oxycontin pills from his home and found no other oxycontin pills or controlled substances during their year-and-a-half surveillance of his residence; none of the alleged buyers provided oxycontin pills to officers; law enforcement did not initiate an undercover buy to prove that he was a drug dealer; he possessed only $50 in cash at the time of his arrest, an amount insufficient to support the government's characterization of him as a drug dealer; the government failed to identify the source from whom he allegedly purchased the drugs; and the majority of materials and pills seized from his home were not stolen or illegal. Gregory characterizes himself as a "firearms and junk collector," not a drug dealer.

To convict a person of possession with intent to distribute oxycontin, the government must prove: (1) the defendant knowingly, (2) possessed oxycontin, (3) with intent to distribute it. *Cf. Coffee*, 434 F.3d at 897. It is undisputed that oxycontin pills were recovered from Gregory's home and that he unlawfully possessed them. Moreover, seven witnesses testified that he supplied them with oxycontin (as well as other controlled substances) on numerous occasions. These witnesses consistently stated that they paid for the drugs with firearms, stolen goods, labor, or cash. Stolen goods, including firearms, were found at defendant Gregory's home. Also recovered from the home were drug trafficking paraphernalia, including scales.

Accordingly, we hold that sufficient evidence supported the jury's verdict convicting Gregory of possession with intent to distribute oxycontin (Count Four).

2.

Regarding his convictions for possession of firearms, including a machine gun, in furtherance of the Count Four oxycodone trafficking offense (Counts Five and Six), Gregory concedes that he possessed the firearms, but he asserts that the government produced no evidence that he threatened or intimidated witnesses with them.

A firearm is possessed in "furtherance of" a drug trafficking offense if it advances, promotes, or facilitates the crime. *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006). There must be a "specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Possession of a firearm on the same premises where drugs are located, without more, is not sufficient to support the conviction; rather, the gun must be "strategically located so that it is quickly and easily available for use." *Id*. Other relevant factors include whether the gun was loaded, the type of weapon, the legality of its possession, and the time and circumstances under which the firearm was found. *Id*.

The evidence at trial established that numerous fully loaded guns, including a machine gun, oxycontin, and drug trafficking paraphernalia, including scales, were found in the same room. As a convicted felon, Gregory possessed the firearms illegally, and he unlawfully converted one of the firearms into a fully automatic weapon. Numerous witnesses testified that he always carried a firearm on him while selling drugs and made it known to them that he did so.

For these reasons, we hold that sufficient evidence supported the jury's verdict convicting Gregory of possessing firearms, including a machine gun, in furtherance of the Count Four oxycodone trafficking offense (Counts Five and Six).

3.

Gregory argues that the conviction on Count Seven, possession of a machine gun, cannot be sustained because he did not know that he possessed a machine gun. We disagree. A firearms enforcement officer testified at trial that the M-1 carbine found in Gregory's residence was "modified" into a functional, loaded, fully-automatic weapon or machine gun which law enforcement tested after they seized it. The officer also testified that Gregory's home contained manuals detailing the conversion process. Gregory does not dispute that the weapon recovered from his home was indeed a machine gun. Based on this evidence, a rational trier of fact could have concluded that Gregory not only "knew" he had a machine gun, but that he was the person *responsible* for making the modifications necessary to convert the weapon into the machine gun.

Accordingly, we hold that sufficient evidence supported his conviction on Count Seven.

4.

Finally, Gregory challenges his conviction on Count Eight, charging him with possessing contraband while incarcerated. He contends that the evidence presented at trial demonstrated that "the use of these items could have been to sell them to other inmates who could use the needles to make tattoos" and that the contraband could have belonged to another inmate.

Again, construing the evidence in the light most favorable to the government as we are required to, we conclude that a rational trier of fact could not only conclude that Gregory *possessed* the contraband but that his *purpose* in possessing it was to injure prison personnel and escape. Our conclusions are based on the testimony of Gregory's cell mate, who testified that he told prison officials about Gregory's escape plan and how he intended to accomplish it. That officials then recovered a syringe, razor blade, and needle from another syringe hidden in Gregory's personal items confirmed the veracity of the inmate's testimony.

Therefore, we hold that sufficient evidence supported Gregory's conviction on Count Eight.

IV.

The final issue Gregory raises on appeal is his contention that the district court imposed an unreasonable sentence. His sentencing challenge is based solely on two narrow grounds: (1) the district court failed to consider all the sentencing factors in 18 U.S.C. § 3553(a), and (2) it treated the Sentencing Guidelines as mandatory or accorded them more weight than the other § 3553(a) factors.

Gregory correctly concedes that we review his sentence for plain error because he did not object to it. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) (citing FED. R. CRIM. P. 52(b)). Under the plain error standard, a defendant must show (1) error (2) that was "obvious or clear," (3) that affected his "substantial rights," and (4) that "affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386. "[O]nly in exceptional circumstances will this court find such error – only, we have said, where the error is so

plain that the trial judge . . . [was] derelict in countenancing it." *Id.* (citation and internal quotation marks omitted).

A.

Regarding his first assignment of error – that the district court did not discuss the § 3553(a) factors at sentencing; that its consideration of the § 3553(a) factors was "cursory"; and that it took into account only the Guidelines range and his criminal history – Gregory's arguments are both legally and factually inaccurate.  As a preliminary matter, the law is clear that the district court "need not explicitly reference each of the sentencing factors of § 3553(a)" when imposing sentence. *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008).  Instead, "there must be sufficient evidence in the record to affirmatively demonstrate the court's consideration of [these factors]." *Id.* (quoting *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006)).

In making its sentencing determination, the district court reviewed the PSR, which contained detailed information about Gregory's history and the circumstances surrounding the crimes of which he was convicted.  Gregory made no objections to the PSR.  The court then heard argument from Gregory and his attorney.  The district judge articulated his awareness that the sentence would profoundly impact Gregory's life, acknowledging that it would "be in all likelihood a life sentence for you."  He then expressed hope that Gregory would live to serve the sentence but stated that the "statistical odds are that you will not."

The district judge then explained his reasons for the sentence he imposed, acknowledging that "there are a number of considerations that I must consider in determining a sentence in a

criminal case." He began by considering "the factors set forth in Title 18, United States Code Section 3553[(a)]," particularly the applicable advisory Guidelines range. *See* § 3553(a)(4). Consistent with § 3553(a)(5) & (6), which require the judge to consider "any pertinent policy statement issued by the Sentencing Commission" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," the judge then noted that the Guidelines range insures fairness and uniformity in sentencing determinations and is "a good policy consideration." He explained that "[i]n other words, Mr. Gregory, you should receive roughly the same sentence standing here before me in Greeneville, Tennessee after conviction of these offenses that any other defendant with a similar background and convicted of similar offenses would receive anywhere else in the country or in this court."

The judge also considered the "nature and circumstances of the offense," § 3553(a)(1), characterizing Gregory's drug and firearm crimes as "dangerous and serious offenses." As to the firearms offenses, the judge explained that "those guns have a way of falling into hands of people who do use them to commit violent, violent crimes." Next, the judge considered defendant Gregory's prior criminal history, § 3553(a)(1), characterizing it as "serious."

In essence, the district court's statements demonstrated that it *did* consider the § 3553(a) sentencing factors. It merely *rejected* them as a basis for departing from the advisory Guidelines range: "Bottom line, Mr. Gregory, is that I find nothing in section 3553([a]), I find no factor which suggests to me that I should sentence outside of the applicable guideline range in this case." Before pronouncing the sentence, the district judge again unambiguously confirmed that he considered all

§ 3553(a) factors: "So after having considered the nature and circumstances of the offenses, the history and characteristics of the defendant, the advisory Guideline range applicable to this case, *as well as all the other factors listed in Title 18, United States Code, Section 3553([a]) . . . .*" (Emphasis added.)

Therefore, because the district court more than adequately demonstrated that it considered all the § 3553(a) factors, we hold that its sentence was not plainly erroneous on that ground.

B.

Gregory's second assignment of error regarding his sentence – that the district court erroneously treated the Guidelines range as mandatory or improperly gave more weight to it than to the other § 3553(a) factors – is also without merit. The district court made no statements suggesting that it viewed the Guidelines range as mandatory. In fact, when first discussing the Guidelines range, the court expressly stated that the Guidelines range was "advisory" and that it had to make a "number of considerations" before determining the appropriate sentence. Nothing in the sentencing transcript remotely suggests that the court construed the Guidelines as mandatory.

As to the assertion that the district court imparted too much weight to the Guidelines range when fashioning its sentence, we rejected an identical argument and characterized it as "frivolous" in *United States v. Marco*, 252 F. App'x 70, 78-79 (6th Cir. 2007) (unpublished) (citing cases holding that "substantial weight" may be given to the advisory Guidelines range and not "faulting" the district court for giving substantial weight to it where the defendant acknowledged that the Guidelines calculation was correct, did not request a sentence below the advisory Guidelines range,

and did not offer any mitigating facts that would have supported a below-the-Guidelines sentence). *See also United States v. Benson*, 195 F. App'x 414, 417 (6th Cir. 2006) (unpublished) (acknowledging that post-*Booker* decisions "have indicated that the Guidelines must continue to play a strong role in sentencing decisions" and stating that "this court is not tasked with demanding that the district judge consider each of the [factors] enumerated in § 3553(a) equally . . .").

Here, as in *Marco*, Gregory does not contend that the district court erred in its calculation of the Guidelines range applicable to his case. "[A] sentence that falls within a properly calculated Guidelines range is accorded a rebuttable presumption of reasonableness." *United States v. Madden*, 515 F.3d 601, 609 (6th Cir. 2008). In fact, we note that the district judge sentenced Gregory at the *bottom* of the applicable Guidelines range.

Because the district court did not treat the sentencing Guidelines as mandatory or "improperly" give them too much weight, we hold that its sentence was not plainly erroneous.

V.

For the reasons stated, we affirm the appealed rulings of the district court.